UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD CREED,<br>      Plaintiff,<br><br>    v.<br><br>NATIONAL TRANSPORTATION<br>SAFETY BOARD,<br>      Defendant. | Civil Action 10-01630 (HHK) |

MEMORANDUM OPINION

Donald Creed brings this action against the National Transportation Safety Board ("NTSB" or "agency"), alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and the Privacy Act, 5 U.S.C. § 552a *et seq*. Creed, a commercial truck driver, asserts that the NTSB acted unlawfully when it posted summaries of Creed's medical information, which it had obtained while investigating a serious multi-vehicle accident in which he was involved, on its public website. On September 27, 2010, this Court entered a temporary restraining order ("TRO") requiring the NTSB to remove that information from its website [#4]. On October 29, after considering Creed's motion for a preliminary injunction and the NTSB's motion to dismiss, the Court issued an order transferring this case to the United States Court of Appeals for the District of Columbia Circuit [#15]. This memorandum sets forth the rationale for the Court's order.

# I. BACKGROUND

On June 26, 2009, Creed, while driving a tractor-trailer truck owned by his employer, was involved in a multi-vehicle highway collision in which ten people were killed. In light of the accident's magnitude, the NTSB initiated an investigation to determine its probable cause.[1] During the investigation by the NTSB staff, the NTSB's medical officer, Dr. Mitchell A. Garber, reviewed Creed's medical records and prepared a summary of information drawn from the records that he concluded were pertinent to the investigation. This summary was posted as an exhibit on the NTSB's public docket of the accident investigation, located on the agency's public website. A NTSB report on the accident which also included a summary of Creed's pertinent medical information, was posted as another exhibit on the public docket. As a part of its investigative process, the NTSB scheduled a public meeting of its five Board members for September 28, 2010 to review the NTSB staff's investigation into the probable cause of the accident and to consider safety recommendations that could help prevent a similar event in the future.

When Creed became aware that documents containing his medical information had been made publicly available on the NTSB's website, he requested through his attorney that those documents be removed. By a letter dated September 24, 2010, from the NTSB General Counsel to Creed's attorney, the NTSB denied the request. *See* Pl.'s Mot. for Prelim. Inj., Ex. C. The NTSB expressed its position that disclosure of the relevant medical information was necessary to the NTSB's performance of its statutory duties and that disclosure was not prohibited by the

---

[1] The NTSB is an independent federal agency charged with determining the probable cause of transportation accidents and promoting transportation safety. The NTSB is headed by five presidentially-appointed Board members.

Privacy Act or FOIA. *Id.* at 2.

The same day, Creed initiated this action and filed a motion for a TRO seeking to require the NTSB to remove the documents from its website and prevent disclosure of his medical information at the September 28, 2010 public meeting of the NTSB Board members. In addition to asserting that public disclosure of his information violated FOIA and the Privacy Act, Creed explained in his motion that he and his employer were defendants in a lawsuit arising from the accident and that the plaintiffs in that lawsuit had been denied discovery regarding his medical records. The denial of discovery regarding his medical records was set forth in an order issued by the Oklahoma Supreme Court, *see* Pl.'s Mot. for Prelim. Inj., Ex. A, and Creed feared that the attorneys for the plaintiffs would access his medical information publicly disclosed by the NTSB.[2]

On September 27, this Court granted Creed's motion in part, ordering the temporary removal of the information from the NTSB's public docket, and denied the motion in all other respects [#4]. The same day, Creed, through his attorney, made written objection to the public disclosure of Creed's medical information and requested that the NTSB either refrain from discussing his medical information at the Board's public meeting or close the meeting to the public when such information was discussed. The five Board members voted unanimously not to close any portion of the meeting. In a letter dated September 28, the NTSB General Counsel informed Creed's attorney of the Board's decision to deny Creed's requests. *See* Def.'s Mot. to

---

[2]     When Creed filed his application for a TRO and a preliminary injunction, he and his employer were defendants in a civil lawsuit in the Cleveland County District Court of Oklahoma; that litigation subsequently settled. He remains a defendant in a suit pending in the U.S. District Court for the Northern District of Oklahoma. Pl.'s Reply Mem. in Support of Mot. for Prelim. Inj. and in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Reply") at 2–3.

Dismiss ("Def.'s Mot."), Ex. A. The letter stated the NTSB's position that, consistent with FOIA and the Government in the Sunshine Act, 5 U.S.C. § 552b *et seq.*, the public interest in Creed's medical information relevant to the NTSB's investigation outweighed Creed's asserted privacy interest. *Id.* at 2, 7.

At the public Board meeting on September 28, the NTSB determined that the probable cause of the accident was Creed's fatigue, caused by acute sleep loss, circadian disruption associated with his work schedule, and mild sleep apnea. Def.'s Mot. at 3 (citing Press Release, NTSB (Sept. 28, 2010), http://www.ntsb.gov/Pressrel/2010/100928.html). The NTSB also made a number of safety recommendations based on its findings. *Id.*[3]

## II. ANALYSIS

Creed raises two claims based on the NTSB's disclosure of his medical information. First, he asserts a "reverse FOIA" claim under the APA, alleging that the NTSB's actions were an arbitrary and capricious exercise of agency authority and not in accordance with Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6), or the NTSB's own regulations, 49 C.F.R. § 801.56 and 49

---

[3] These safety recommendations include recommendations to the Federal Motor Carrier Safety Administration ("FMCSA") to require all heavy commercial vehicles to be equipped with video event recorders, improve its fatigue educational materials and to require all motor carriers to adopt a specific fatigue management program; to Creed's employer, Associated Wholesale Grocers, Inc., to create a comprehensive fatigue management program; and to the National Highway Traffic Safety Administration ("NHTSA") to set performance standards for event data recorders. The NTSB also reiterated various previously issued safety recommendations, including: deployment of technologies in commercial vehicles to reduce fatigue-related accidents; assessment of the effectiveness of fatigue management plans implemented by motor carriers; and assessment of whether collision warning systems with active braking and electronic stability control in commercial vehicles would reduce accidents.

C.F.R. § 801.10(i).[4]  Second, he claims that the disclosures violated the Privacy Act.  He seeks a preliminary injunction to prevent the NTSB from (1) re-publishing the documents containing his medical information; and (2) including his medical information in its final report on the accident.

The NTSB responds that Creed cannot prevail on the merits of these claims and is not entitled to injunctive relief.  It further asserts, however, that this Court is without jurisdiction to entertain Creed's claims because the Independent Safety Board Act, codified at chapter 11 of U.S. Code title 49 ("the Act" or "chapter 11"), vests exclusive jurisdiction over this case in the U.S. Court of Appeals for the District of Columbia Circuit.  Thus, as a threshold matter, the Court must address whether it has jurisdiction over Creed's claims.

The Act's judicial review provision, section 1153(a), provides in relevant part: "The appropriate court of appeals of the United States or the United States Court of Appeals for the District of Columbia Circuit may review a final order of the National Transportation Safety Board under this chapter."  49 U.S.C. § 1153(a).  Determining whether section 1153(a) precludes this Court from hearing Creed's case thus requires the resolution of two questions: would disposing of Creed's claims involve a "review [of] a final order of the [NTSB] under" chapter 11?  And, if so, is the jurisdiction created by section 1153(a) exclusive to the courts of appeals?  The Court now turns to these questions, answering both in the affirmative.

---

[4]  Under *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), a party may seek judicial review under the APA of an agency's disclosure of information when that disclosure is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id*. at 317 (quoting 5 U.S.C. § 706(2)(A)).

A.  **Adjudication of Creed's Claims Would Require Review of Final NTSB Orders Under Chapter 11**

The NTSB asserts that its denials of Creed's requests to prevent the public disclosure of his medical information constitute final orders pursuant to the Act, such that any judicial review of those denials would fall squarely within the language of section 1153(a). Creed makes multiple responses. First, he asserts that section 1153(a) is intended to reach only those claims that challenge the merits of the NTSB's probable-cause determinations and safety recommendations or that attack the processes by which those decisions are reached. Pl.'s Reply at 5. By contrast, his own claims, as he sees them, do not seek to influence the NTSB's decisionmaking process or restrict the universe of information that it may consider during that process. Thus, Creed argues, his claims do not seek review of NTSB action "under [chapter 11]" within the meaning of section 1153(a); rather, they arise "under *other* 'chapters' of the U.S. Code." *Id*. at 6. This argument, however, relies on too narrow an understanding of the NTSB's statutory obligations.

Under the Act, the NTSB is mandated to "investigate . . . and establish the facts, circumstances and cause or probable cause of . . . a highway accident . . . [that] the Board selects in cooperation with a State." 49 U.S.C. § 1131(a)(1)(B). Further, the NTSB must "report on the facts and circumstances of each accident investigated by it" and "*shall make each report available to the public* at reasonable cost." *Id.* § 1131(e) (emphasis added). Specifically, "[u]pon completion of an accident investigation," NTSB investigators must "complete a factual report with supporting documentation and *include these items in the public docket* for the investigation." 49 C.F.R. § 801.30 (emphasis added). The NTSB's decisions about which facts

to publicly document are thus central to its investigative duties as mandated by Congress.[5]

Accordingly, despite his assertions to the contrary, Creed's claims challenging the NTSB decisions to disclose his information are direct challenges to the manner in which the NTSB discharges its statutory duties under the Act. *Cf. Chiron v. NTSB*, 27 F. Supp. 2d 257, 259 (D.D.C. 1998) (holding that section 1153(a) gave the courts of appeals "jurisdiction to review NTSB matters relating to its investigation" of an aircraft fire); *Seminole Pipeline Co. v. Vogt*, 794 F. Supp. 438, 441 (D.D.C. 1992) (holding that section 1153(a)'s predecessor gave the courts of appeals "jurisdiction over challenges to any NTSB regulations and orders which have arisen, or which will arise, from the investigation of [a pipeline] accident").

The fact that Creed's complaint presents causes of action based on the APA and the Privacy Act rather than chapter 11 itself does not alter this conclusion. Section 1153(a) grants the courts of appeals jurisdiction to review "a final order of the [NTSB] under this chapter." The provision's scope thus turns expressly on whether the order in question, rather than the claim challenging it, was made "under this chapter." Because, as described above, the decisions that Creed challenges were made during the NTSB's discharge of its statutory duties, those decisions

---

[5] Further, the D.C. Circuit has held that claims need not implicate the core of an agency's statutory mission to be subject to a statutory review provision. In *City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979), appellants challenged both the Federal Aviation Administration's determination that a proposed radio tower posed "no hazard" and the Federal Communications Commission's grant of a construction permit for the tower on the basis that the agencies allegedly had violated the National Environmental Policy Act by failing to prepare environmental impact statements. *Id.* at 931. Appellants asserted that, because of the nature of their claims and because they were not parties to the agency proceedings, their claims were too "peripheral . . . to be confined to the [relevant] special statutory review provisions." *Id.* at 936. The D.C. Circuit dismissed this argument out of hand, declining the appellants' invitation to limit the special review statutes' reach to claims "going to the substantive core of an agency's mandate." *Id.* at 936–37.

were made "under" chapter 11. Consequently, Creed's reliance on causes of action brought under other statutes does not place his suit beyond the reach of section 1153(a). *See Chiron*, 27 F. Supp. 2d at 260–61 (holding that, where section 1153(a) applied, the APA could not confer jurisdiction on the district court); *Seminole Pipeline Co.*, 794 F. Supp. at 440 (holding that, under section 1153(a)'s predecessor, the district court did not have jurisdiction over constitutional or APA challenges to an NTSB order); *cf. City of Rochester v. Bond*, 603 F.2d 927, 936–37 (D.C. Cir. 1979) (holding that the specific substantive ground alleged is irrelevant to the application of a special statutory review provision and instead "*all* issues concerning the lawfulness of an order subject to statutory review must be raised within the statutory proceeding if that remedy is otherwise adequate" (emphasis added)).[6]

Creed is also not aided by the line of cases that have allowed district courts to retain jurisdiction over claims that are not "inescapably intertwined" with the review of orders that can only be challenged in the courts of appeals. *See* Pl.'s Reply at 6–7 (citing cases); *see also Merritt v. Shuttle, Inc.*, 245 F.3d 187 (2d Cir. 2001); *Breen v. Peters*, 474 F. Supp. 2d 1, 4 (D.D.C. 2007). Under those cases, for example, a district court has jurisdiction over a pilot's negligence action under the Federal Tort Claims Act ("FTCA") against Federal Aviation Administration employees for denying him medical certificates, even though the denial itself

---

[6] The Privacy Act's grant of original jurisdiction to the district courts, 5 U.S.C. § 552a(g)(1), does not change this conclusion. The D.C. Circuit has adopted the rule that "where an agency order arising from a common factual background and addressing a common question of law relies on two statutory bases that give rise to separate paths for judicial review, the entire order should be reviewed in a comprehensive and coherent fashion, and that review should take place in the court of appeals." *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1195 (D.C. Cir. 1995) (citing *Suburban O'Hare Comm'n v. Dole*, 787 F.2d 186, 192 (7th Cir. 1986)). Therefore, despite the Privacy Act's grant of jurisdiction to the district courts, section 1153(a) still governs the judicial review of Creed's claims.

could, pursuant to a special review statute, only be reviewed by the court of appeals. *See Beins v. United States*, 695 F.2d 591, 597 (D.C. Cir. 1982). This result is justified by the fact that the court of appeals, in reviewing the denial itself under the special review statute, could neither hear the FTCA claim nor award the plaintiff damages for negligence. *Id.* at 598 n.11. Thus, these cases essentially allow for district court jurisdiction over claims that are extrinsic to the agency decision itself and thus would be beyond the scope of the court of appeals' review of that decision. Here, however, that is not the case: because the NTSB had the authority to grant the relief that Creed now seeks, but decided not to, a review of that decision by the court of appeals would reach all of Creed's claims. *See Merritt*, 245 F.3d at 188 & n.9; *Breen*, 474 F. Supp. 2d at 5. Put another way, Creed raises no claims that are extrinsic to the agency decisions he challenges such that they would not be captured by the court of appeals' review thereof. Accordingly, Creed's argument that his claims are not "inescapably intertwined" with the review of the NTSB decisions at issue must fail.

Next, Creed asserts that the letters from the NTSB General Counsel denying his requests to maintain the privacy of his medical information did not constitute "final orders," because they post-dated the NTSB's decision to include Creed's information in the public docket. Thus, he avers, even if section 1153(a) otherwise applies, adjudication of his claims would not require the Court to "review a final order" of the NTSB under chapter 11. Pl.'s Reply at 7. This argument is unavailing.

Because the Act does not define "order," the Court uses the APA's definition of the term, *Watts v. SEC*, 482 F.3d 501, 506 (D.C. Cir. 2007), which provides that an "order" is "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of

an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). The Supreme Court has interpreted the term "final disposition" to require "some determinate consequences for the party to the proceeding." *Int'l Tel. & Tel. Corp.*, *Commc'ns Equip. & Sys. Div. v. Local 134 Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 443 (1975). In other words, "[t]o be deemed 'final,' an order must mark the 'consummation' of the agency's decisionmaking process, and must determine 'rights or obligations' or give rise to 'legal consequences.'" *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

Under this standard, the NTSB General Counsel's letters constituted final orders.[7] The letters were conclusive determinations of the issues raised by Creed's requests. They were not tentative, advisory, or interlocutory. The decisions recorded in these letters created definitive consequences for Creed by allowing public access to his medical information. The fact that these decisions were communicated to Creed via letter does not change this conclusion. *See Aerosource, Inc. v. Slater*, 142 F.3d 572, 577 (3d Cir. 1998) ("[L]etters and other communications can be final orders depending upon the surrounding circumstances and other indicia of finality . . . ."); *see also City of Dania Beach*, 485 F.3d at 1188 (finding an FAA letter to be a final order); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 433–37 (D.C. Cir. 1986) (reversing a district court determination that an agency had not issued a final order or taken final agency

---

[7] The letters denying Creed's requests are not dissimilar from the order at issue in *Chiron v. NTSB*. There, the court found the NTSB's denial of the plaintiffs' petitions for the release of cargo information from the NTSB's investigation to be an NTSB order within the meaning of section 1153(a). *Chiron*, 27 F. Supp. 2d at 261. By assuming jurisdiction over the case, the D.C. Circuit indicated its agreement with the district court's conclusion. *Chiron Corp. & PerSeptive Biosys., Inc. v. NTSB*, 198 F.3d 935 (D.C. Cir. 1999) (dismissing the case on other grounds).

action where the agency had sent letters advising pesticide manufacturers of required labeling changes).

Creed nevertheless asserts that the General Counsel's letters were not final orders because they post-dated the NTSB's decision to publicly disclose his medical information. Thus, he avers, the letters were not orders but rather post hoc rationalizations of the agency's original decision to disclose his information.[8] Pl.'s Reply at 7. The Court cannot agree. The General Counsel's letter documenting the agency's refusal to remove Creed's information from the public accident docket communicated to Creed that the NTSB had decided to uphold its original decision to make that information public. Consequently, that letter constituted the culmination of the agency's decisionmaking process as to how to treat Creed's medical information and represented the agency's final determination of both its own and Creed's rights with regard to that information. Creed cannot characterize his claims as challenging the NTSB's original decision to make his medical information public but not the General Counsel's letter upholding that decision; such logic would permit plaintiffs to challenge only antecedent decisions or interlocutory orders — even where subsequent final orders exist — in order to escape the reach of special judicial review statutes like section 1153(a).

Finally, adjudicating Creed's claims would involve a "review" of the decisions recorded in the letters sent by the General Counsel to Creed's attorney. Creed asserts that those decisions

---

[8] Creed's argument that the letters only reflect post hoc rationalizations of the NTSB's decisions does not appear to apply to the NTSB's September 28, 2010 letter refusing to close the agency's hearing to the public during any discussion of Creed's medical information. This letter appears to have predated the hearing (although perhaps only by hours) and clearly evidences decision-making that predated the hearing, including a vote of the NTSB Board members.

were made in contravention of the APA, the Privacy Act, FOIA, and the NTSB's own regulations. To resolve these claims, the Court would plainly have to review the correctness of the NTSB's decisions (which the NTSB itself justified as consistent with those laws and its own statutory mandate). Accordingly, Creed's claims fall within the scope of section 1153(a): the letters from the NTSB General Counsel were final orders; those orders reflected decisions made pursuant to the NTSB's statutory mandate to investigate crashes; and resolution of Creed's suit would require a review of those decisions. Thus, the Court must determine whether the jurisdiction created by section 1153(a) is exclusive.

**B.     The Jurisdiction Created by Section 1153(a) is Exclusive.**

Section 1153(a) itself is silent as to whether it vests exclusive or concurrent jurisdiction over NTSB orders in the courts of appeals. The D.C. Circuit has held, however, that if a special statutory review procedure exists, courts should presume that Congress intended that review to be exclusive. *City of Rochester*, 603 F.2d at 931; *see also Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77–78 (D.C. Cir. 1984) ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."). The same rationale applies to section 1153(a). *See Chiron*, 27 F. Supp. 2d at 258 (holding that, under section 1153(a), the courts of appeals have exclusive jurisdiction to review NTSB matters related to agency investigations); *Seminole Pipeline*, 794 F. Supp. at 440–41 (holding that section 1153(a)'s predecessor granted exclusive jurisdiction to the courts of appeals to adjudicate challenges to NTSB orders). Accordingly, the courts of appeals have exclusive jurisdiction over Creed's claims.

C.  **Transfer of the Case to the U.S. Court of Appeals for the District of Columbia Circuit.**

Because this case falls within the reach of section 1153(a), and because that provision vests exclusive jurisdiction in the courts of appeals, this Court lacks jurisdiction to hear this case. The NTSB's impending publication of its final accident report, however, suggests that this case should be decided expeditiously. Further, it would serve "no useful purpose" to force Creed to "start over." *Air Line Pilots Ass'n v. Civil Aeronautics Bd.*, 750 F.2d 81, 84 (D.C. Cir. 1984). Accordingly, the Court finds that it serves the interests of justice to transfer this case to the United States Court of Appeals for the District of Columbia Circuit pursuant to 28 U.S.C. § 1631 and 49 U.S.C. § 1153(a).

### III.  CONCLUSION

For the foregoing reasons, the Court transferred this case to the United States Court of Appeals for the District of Columbia Circuit pursuant to 28 U.S.C. § 1631 and 49 U.S.C. § 1153(a).

                                                Henry H. Kennedy, Jr.
                                                United States District Judge